E-FILING                                           Original

ADR                                                FILED
                                                   JUN 25 2020
                                                   SUSAN Y. SOONG
                                                   CLERK, U.S. DISTRICT COURT
                                                   NORTHERN DISTRICT OF CALIFORNIA
                                                   SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JihShyr Yih | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. |
| | ) CV 20 4184 |
| Taiwan Semiconductor Manufacturing Company, Ltd. | ) |
| Defendants. | ) EMPLOYMENT DISCRIMINATION COMPLAINT |
| | ) VKD |

1. Plaintiff resides at:

   Address _____2474 Trelawn Street,_____

   City, State & Zip Code _Yorktown Heights, NY 10598_____

   Phone _____914-440-3478_____

2. Defendant is located at:

   Address _____8, Li-Hsin Rd. 6, Hsinchu Science Park,_____

   City, State & Zip Code _Hsinchu 300-78, Taiwan_____

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination ("Title VII"). Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5. Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

4. The acts complained of in this suit concern:

   a. _x_ Failure to employ me.

   b. ___ Termination of my employment.

1        c. __ Failure to promote me.

2        d. _x_ Other acts as specified below.

3  __ Failure to employ me, in violations of Age Discrimination in Employment Act of 1967

4  __ ("ADEA") and State of California's Fair Employment and Housing Act ("FEHA"); and

5  __ Retaliation by not employing me and threatening to sue me, in violations of ADEA, _____

6  ___Title VII, and FEHA._____

7

8

9  5.    Defendant's conduct is discriminatory with respect to the following:

10     a. __ My race or color.

11     b. __ My religion.

12     c. _x_ My sex.

13     d. _x_ My national origin.

14     e. _x_ Other as specified below.

15     _My age. My familial status. Retaliation._____

16 6.    The basic facts surrounding my claim of discrimination are:

17     ___See attached pages 4-14._____

18

19

20

21

22

23

24

25 7.    The alleged discrimination occurred on or about _10/03/2017_____.

26                                     (DATE)

27 8.    I filed charges with the Federal Equal Employment Opportunity Commission (or the

28 California Department of Fair Employment and Housing) regarding defendant's alleged

Form-Intake 2 (Rev. 4/05)          - 2 -

discriminatory conduct on or about  10/30/2017                     .
                                    (DATE)

9.  The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter (copy attached), which was received by me on or about  02/05/2018                     .
                                    (DATE)

10. Plaintiff hereby demands a jury for all claims for which a jury is permitted:

    Yes  x      No  ____

11. WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, costs, and attorney fees.

DATED:  06/22/2020                    _____
                                      SIGNATURE OF PLAINTIFF


(PLEASE NOTE: NOTARIZATION          JihShyr Yih
IS NOT REQUIRED.)                   PLAINTIFF'S NAME
                                    (Printed or Typed)

Form-Intake 2 (Rev. 4/13)

- 3 -

## STATEMENT OF FACTS

### The Parties

1. Plaintiff JihShyr Yih ("Plaintiff") is an engineer, a New York State resident, and a U.S. citizen. Plaintiff is born in Taiwan but lives in the U.S. since 1983.

2. Defendant is Taiwan Semiconductor Manufacturing Company, Ltd. ("TSMC"), a multinational company headquartered in Hsinchu, Taiwan. TSMC has approximately 43,000 employees globally.

3. TSMC has a fully owned subsidiary, Taiwan Semiconductor Manufacturing Company, North America, Ltd. ("TSMC NA"), headquartered in San Jose, California.

4. This Court has established that TSMC NA, a general manager of TSMC within California, facilitates sales between TSMC and its customers in the U.S. and also performs marketing and customer service in the U.S. for TSMC. *See* case number C 10-05525 SBA.

5. According to three *TSMC Annual Report*'s, TSMC has about **67%** (NT$570 out of NT$843 in billions), **67%** (NT$642 out of NT$947 in billions), **67%** (NT$656 out of NT$977 in billions) of annual revenues attributed to TSMC NA in 2015, 2016, 2017, respectively.

6. According to the *TSMC Annual Report 2017:* a) TSMC is dominated by U.S. ownership: Seven of the largest ten shareholders are American. These seven U.S. investors hold 27.21% of TSMC shares, enough to surpass the second largest 20.33% held by all Taiwanese investors. b) TSMC is dominated by U.S. operations: About 67% of the total sales are performed within the U.S. c) TSMC is dominated by Americans in corporate governance: TSMC has the following U.S. citizens: the Founder/Chairman, one of the two co-CEO's, and four (the most by nationality) out of the ten Board Directors.

7. As a result, TSMC is *an American employer* covered by ADEA, Title VII, and FEHA.

## Administrative Procedures

8. Plaintiff files a complaint to EEOC on 10/30/2017 and receives the Notice-of-Right-to-Sue letter on 02/05/2018.

9. Plaintiff files suit on 04/30/2018 as a *pro se* litigant at the U.S. District Court for the Southern District of **New York**. On 06/25/2019, the case is dismissed for lack of personal jurisdiction. On 06/17/2020, U.S. Court of Appeals for the Second Circuit affirms.

## Jurisdiction

10. According to the *TSMC Annual Report 2017:* TSMC has **substantial, continuous and systematic** contacts with California because about **67%** of its annual revenue is attributed to its general manager TSMC NA within California. Thus, TSMC is found **essentially at home** in California, and the State is an **exceptional case** compared to other States based on sales. Therefore, California has general personal jurisdiction over TSMC.

11. But for the forbidden discrimination and retaliation, Plaintiff would have worked in or telecommuting into multiple global locations, including San Jose, California, developing business intelligence for sales, marketing, and customer service in collaboration with TSMC NA, with which TSMC's contacts are continuous and numerous in sales, marketing, and customer service. Therefore, California also has specific personal jurisdiction over TSMC.

## Contact between TSMC and Plaintiff

12. Upon information and believe, TSMC hires many of Plaintiff's colleagues at IBM T. J. Watson Research Center, Yorktown Heights, New York. As of 2017, there are at least three such persons occupying prominent positions in the TSMC Corporate Management Team: 1) "Employee A" SVP, Research & Development/ Technology Development, 2) "Employee B" VP, Corporate

- 5 -

Planning Organization ("CPO"), and 3) "Employee C" VP, Research & Development/Corporate Research and Chief Technology Officer, among them "Employee A" and "Employee C" were recruited when they were working for IBM in New York.

13. TSMC retains a headhunting agent, *Lighthouse Global Resources* ("LGR") in Singapore for global recruitment. LGR has a dedicated *TSMC Account Manager* Ms. Tammy Lee ("Headhunter 1").

14. On or about 07/14/2017, LGR headhunter Mr. Jun Huang ("Headhunter 2") solicits Plaintiff for a position titled "Statistical/Predictive Modeling Architect/Leader" ("Job A") via a social media company *LinkedIn*, where Plaintiff is profiled as a professional in the Greater New York City Area.

15. "Headhunter 1" and "Headhunter 2" each conducts several meetings with Plaintiff for better fits of his qualifications before recommending him to TSMC.

16. On or about 08/02/2017, TSMC HR Managers Mr. Wenwei Willie Chang ("Supervisor 1") and "Supervisor 2" interview Plaintiff using a Skype video call for one hour followed by a 20-minute telephone call for a different position ("Job B") for the work of *CEO Decisions*.

17. Plaintiff discloses his New York location to TSMC supervisors and LGR headhunters in his reply emails to the various meeting requests. They know that Plaintiff is in New York.

18. In the interview for "Job B", "Supervisor 1" also asks Plaintiff: "What year did you graduate from the National Taiwan University, in comparison with your mates "Employee A" and "Employee C"?", "Where did you serve your [Taiwan] military duty afterwards?" "How many children do you have?", and "Does your wife work?" Plaintiff does not understand why the questions are relevant, he answers the questions, but he asks: "Why are you asking these?"

19. Based on Plaintiff's answers, TSMC knows about the following: He graduated from a four-year university in 1981 and then did two years of mandatory military service before going to the

U.S. in 1983 as a graduate student. He is married with children. Given that most four-year university students in Taiwan graduate about 22 in age, "Supervisor 1" asks the questions to deduce that Plaintiff is about 58 years old (2017 - 1981 + 22 = 58) and has stayed in the U.S. for about 34 years (2017 - 1983 = 34).

20. On or about 08/07/2017, upon a request of "Headhunter 2", Plaintiff debriefs him about what happened in the interview and the new "Job B".

21. "Headhunter 2" tells Plaintiff: "[Supervisor 1] gave you an updated oral job description, and it's a [job] better justified on using you, ... obviously different from what I delivered ... I know that they sometimes gave candidates new option based on candidate's background and experience."

22. "Headhunter 2" confirms "Job B" based on TSMC's needs: a) to develop holistic business intelligence and corporate planning for *CEO Decisions* over sales, marketing, customer service, and value chain processes, and b) to transform the existing piecemeal efforts, which the co-CEO's and the Chairman have problems making use of, by the heads of CPO and IT, and c) to coordinate organizations across the company.

23. Upon information and belief, "Job B" is to replace "Employee B" as VP, CPO in the future.

24. On or about 08/07/2017, "Supervisor 1" emails to Plaintiff that TSMC will continue the hiring process for "Job B" and the next step is to interview with "Employee B".

25. On or about 09/05/2017, Plaintiff also receives written feedback from "Headhunter 2", that "your skills, experience and knowledge in IT and computer science ... truly caused a heated discussion within TSMC and you also bring us ... credit in TSMC indirectly, they say we are truly good at searching since they can not find anyone [as] good like you [on] their own, ..." "Headhunter 2" then mentions another new position ("Job C") in TSMC and that "you ... will be good and powerful to their IT department so [they] won't lose any chance [that] could help the operation."

26. Consequently, on or about 09/25/2017, TSMC SVP, Information Technology and Chief Information Officer ("CIO"), Mr. Stephen T. Tso ("Supervisor 3") interviews Plaintiff using a Skype video call. "Supervisor 3" is accompanied by HR Director, Mr. Hen-Yih Terance Chao ("Supervisor 4"), and IT Senior Director, Mr. Thomas Chen ("Supervisor 5").

27. Upon information and believe, "Supervisor 3" is to retire along with the legendary TSMC Founder, "Employee B" is also near retirement to present a job opening of "Job B", and a reorganization is to follow.

28. Upon information and believe, Plaintiff is recommended by "Employee A", "Employee B", and/or "Employee C" for "Job B" and "Job C" and Plaintiff is considered by the Chairman and/or the co-CEO's for both positions. Plaintiff seeks and is qualified for "Job A", "Job B", and "Job C".

29. "Supervisor 3" arrives to the interview late. Plaintiff barely introduces himself, and "Supervisor 3" promptly interrupts him by raising a folder containing background check done by LGR about Plaintiff, and then complains about IBM's practice of protecting former employees' privacy and LGR's failure to get more information. "Supervisor 3" then asks: "Did you leave your previous position at IBM voluntarily or involuntarily?" Later on "Supervisor 3" continues to pry with the question: "Did you get any financial benefit to leave IBM?"

30. "Supervisor 3" requests Plaintiff to provide a list of names after the interview for reference check. Meanwhile, Plaintiff gives the name of "Professor P" to TSMC supervisors as a reference. Plaintiff says that "Professor P" was a former college professor of his in Taiwan, who paid him as an undergraduate assistant and still deems him a best student. No TSMC supervisors object to "Professor P" as a reference at the time.

31. "Supervisor 3" then loudly pronounces in Chinese: "Jia Ting" (family), in a harsh tone with a livid face, and switches to the following family related questions: "How many children do you have?", "How old are your children?", "What are your children doing now?", "What future schools

are your children going to attend?", "Are you married?", and "Does your wife work?"

32. These inquiries are characterized by EEOC as prohibited practices and may be regarded as evidence of "intent to discriminate" when asked in the pre-employment context.

33. Plaintiff is shocked by the intimidating, interrogating style of "Supervisor 3" with more and more prying questions, but still manages to answer that Plaintiff is married with grown children but still dependents of Plaintiff.

34. Plaintiff challenges these inappropriate questions by saying, "However, it is not for me to decide what my children want to do in the future." and "Why don't you ask them yourself?"

35. "Supervisor 3" abruptly ends the interview by standing up and leaving the video conference room without saying goodbye. "Supervisor 4" and "Supervisor 5" both look embarrassed by the behavior of "Supervisor 3" and also leave the room holding their heads low.

36. No job qualifying questions are asked in this interview, which ends in 20 minutes.

37. Right after the interview for "Job C", Plaintiff receives an email from "Headhunter 2", who is eager to hear how the interview went and expects to hear good news. Plaintiff replies to "Headhunter 2" and "Headhunter 1", stating that Plaintiff feels offended by the interrogating and inappropriate questions of "Supervisor 3" concerning his family. "Headhunter 2" replies that "[he] was working with Defendant's Human Resource[s] to figure out exactly what happened during the interview."

38. Three days after the interview, Plaintiff emails to "Supervisor 1" a list of eleven names for reference check.

39. On or about 10/03/2017, "Headhunter 1" calls Plaintiff to inform rejections for all three jobs with feedback blaming Plaintiff for being "too senior to fit in." Plaintiff feels extremely offended by this explanation, and writes to "Headhunter 2" and "Headhunter 1" that he feels discriminated

against.

40. As a result, on or about 10/05/2017, "Supervisor 4" telephones Plaintiff. During the call, Plaintiff explains his concerns to "Supervisor 4".

41. On or about 10/13/2017, Plaintiff receives a letter from "Attorney A", a legal representative of TSMC. The letter explains that Plaintiff was denied employment because "[Plaintiff] ... failed to provide a list of persons for reference check ... during the [ ] Interview."

42. The letter also explains that "The reason ["Supervisor 1" and "Supervisor 3"] asked questions regarding you and your family members is to learn ... possible issues ..., in considering you and families have stayed in the United States for many years," effectively admitting that Plaintiff's familial status is a factor in the hiring decision.

43. Upon information and believe, the need to relocate a family having stayed in the U.S. for over 34 years to Taiwan is a **negative** factor and **harms** Plaintiff in the TSMC's hiring decision. Issues such as family members cannot adjust to a very different environment, culture, language, and so on, can reasonably cause disruptions to Plaintiff at work.

44. Upon information and believe, Plaintiff's being perceived as American is also a negative factor in the hiring process, because TSMC expects issues in the possible relocation to Taiwan considering that he has stayed about 34 years in the U.S.

45. Finally, the letter threatens to sue Plaintiff, "should [Plaintiff] disclose to the media, the public and any other third parties related to the interview without TSMC's prior approval," causing Plaintiff emotional distress.

46. On or about 10/17/2017, as expected, TSMC formally announces that "Supervisor 3" is to retire on 03/01/2018. The personnel change is widely reported on Taiwanese media, where "Employee D" and "Supervisor 5", as designated replacements each taking on a partial

responsibility, are hailed as *homegrown talents*[1], who are likely to shift spending on homegrown assets, affecting about $10 billion in annual capital spending.

47. On or about 04/16/2018, "Attorney A" sends another letter and explains that "Professor P" is an "unrelated acquaintance" of Plaintiff's to be counted as a reference.

48. Upon information and believe, TSMC rejects "Professor P" as an "unrelated acquaintance" of Plaintiff's because Plaintiff is of age 58 and has long graduated 36 years ago.

49. "Professor P" is now Chief Technology Officer of a world's top computer manufacturer and interacts with Plaintiff professionally since he graduated.

50. In the *TSMC Corporate Social Responsibility Report 2018*, on the page of *Human Rights Policy Concerns and Practices*, in the section of *Eradicate Discrimination to Ensure EEO*, TSMC explains **Risk Assessment** in its entirety as, "From the beginning of recruitment, TSMC follows internal control procedures to eliminate discrimination. Additionally, TSMC will not ask applicants for any information that are not related to their jobs when applicants submit their resumes through the Company's resume system." TSMC has 4,363 known human rights cases in 2017 besides Plaintiff's.

## Qualification, Age, and Familial Status Differences in Competition

51. On or about 08/03/2018, TSMC suffers an incident of computer virus outbreak by internal IT miss-operations, causing production shutdown for several days. The damages include hundreds of million dollars in revenue, gross margin impact, shipment delays, and other costs, for which "Employee D" and "Supervisor 5", as the top-most IT leaders, are responsible.

52. In February 2019, TSMC announces another production disruption affecting sales of $550 million and requires better process controls, for which "Employee D" and "Supervisor 5" are also

---

[1] Taiwanese who have no academic degrees or industry work experiences gained outside Taiwan

responsible.

53. Plaintiff earned two American degrees, a Ph.D. in Computer Science and Engineering from the U. of Michigan, Ann Arbor, and an M.S. in Computer Science from Michigan State U.

54. Plaintiff worked for IBM for over two decades and earned many outstanding accomplishment awards. He was in a highest honor order of *IBM Corporate Technical Recognition*, which according to the citation is "shared by fewer than 200 employees" among some 400,000, in recognition of his work for the IBM Sales and Distribution ("S&D") value chains transformation. Plaintiff also works on S&D and IT for other Fortune 500 companies as clients.

55. Plaintiff served as chief of staff, Services and Business Analytics & Mathematical Sciences, for the world-renowned IBM Thomas J. Watson Research Center ("TJWRC"), in charge of planning for TJWRC as well as IBM's Global Services for more than two years. He is a proven manager and a technologist with more than two decades of experiences.

56. Plaintiff served as a Hiring Committee Chair of TJWRC for more than two years. He is an expert of Human Resources with decades of practices over hundreds of hiring cases.

57. Upon information and believe, persons who are selected for "Job A", "Job B" or "Job C", are either significantly younger and much less qualified, or not having the same American characteristics and traits, or do not have the same familial status at issues, comparing to Plaintiff.

### Age Discrimination in Violation of ADEA and FEHA

58. TSMC treated Plaintiff less favorably based on age, in violations of ADEA **(Claim 1)** and FEHA **(Claim 2)** by rejecting a former college professor of Plaintiff's as a reference and consequently denying Plaintiff employment, but for Plaintiff being 58 of age so that the relation appeared to be 36 years ago, the professor would have been accepted as a reference; by filling at least a job with persons who are significantly younger than Plaintiff, but blaming him for being "too

senior to fit in" the jobs at age 58; by filling at least a job with persons who are significantly younger and less qualified, but denying Plaintiff the jobs.

### Familial Status Sex-Plus Discrimination in Violation of Title VII and FEHA

59.    TSMC treated Plaintiff less favorably based on his familial status, in violations of Title VII **(Claim 3)** and FEHA **(Claim 4)** by denying Plaintiff at least a job based on that Plaintiff's family has stayed in the U.S. for over 34 years and the family may need to relocate to Taiwan, but filling the jobs with persons who do not have a family having stayed in the U.S. for over 34 years to relocate.

### National Origin Discrimination in Violation of Title VII and FEHA

60.    TSMC treated Plaintiff less favorably based on his perceived national origin being American, in violations of Title VII **(Claim 5)** and FEHA **(Claim 6)** by denying Plaintiff at least a job based on that his American academic degrees, American work experiences, and American traits acquired over 34 years are to cause issues and problems should he relocate to Taiwan, but filling the jobs with persons who do not have the perceived American characteristics like Plaintiff has.

### Retaliation in Violation of ADEA, Title VII, and FEHA

61.    Plaintiff engaged in protected activity when he challenged TSMC supervisors for questioning him about his age and familial status, when he objected to different TSMC supervisors about their inappropriate questions about Plaintiff's familial status, and when he again complained to TSMC about the inappropriate questions via TSMC's headhunting agent. TSMC then retaliated against Plaintiff by denying him employment because of the protected activity, by threatening to sue Plaintiff, should he disclose the unlawful age, familial, and national origin discrimination to the media, in violations of ADEA **(Claim 7)**, Title VII **(Claim 8)**, and FEHA **(Claim 9)**.

### Damages

62. As a result of Defendant's discrimination and retaliation, Plaintiff has and continues to suffer lost wages, lost employment and career opportunities, lost employment benefits, other pecuniary damages and lost privileges of employment, and has incurred costs in the prosecution of his claims.

63. As a result of Defendant's discrimination and retaliation, Plaintiff suffered and continues to suffer emotional distress, pain and suffering, and physical and mental anguish.

64. Defendant's unlawful conduct was willful, wanton, and egregious and Plaintiff is entitled to punitive damages.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

February 1, 2018

**Jishyr Yih**
**2474 Trelawn Street**
**Yorktown Heights, NY 10598**

Re:   *Jihshyr Yih v. Taiwan Semiconductor Manufacturing Company*
      *EEOC Charge No.: 520-2018-01574*

Dear Mr. Yih:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

You allege that you were discriminated against by Taiwan Semiconductor Manufacturing Company on the basis of your age, in violation of the Age Discrimination in Employment Act. In accordance with our procedures, the Commission has evaluated your charge based upon the information you submitted, the EEOC has decided not to further pursue its investigation of your charge. This determination is final.

Enclosed is your Dismissal and Notice of Rights. If you wish to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice; otherwise your right to sue will be lost.

Please contact Federal Investigator Mabel Tso at (212) 336-3762 if you have any questions.

Sincerely,

_____ /MT
Kevin J. Berry
District Director
enc.

EEOC FORM 131 (11/09) **U.S. Equal Employment Opportunity Commission**

| | PERSON FILING CHARGE |
|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY<br>8, Li-Hsin Road<br>6, Hsinchu Science Park<br>Hsinchu 300-78, | **Jihshyr Yih** |
| | THIS PERSON (check one or both)<br>☐ Claims To Be Aggrieved<br>☒ Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**520-2018-00491** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

☐ Title VII of the Civil Rights Act (Title VII) ☐ The Equal Pay Act (EPA) ☐ The Americans with Disabilities Act (ADA)

☒ The Age Discrimination in Employment Act (ADEA) ☐ The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. ☒ No action is required by you at this time.
2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.
3. ☐ Please provide by a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.
4. ☐ Please respond fully by to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.
5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by to
   If you **DO NOT** wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Mabel Tso,
Investigator
*EEOC Representative*

Telephone (212) 336-3762

**New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**
**Fax: (212) 336-3625**

Enclosure(s): ☒ Copy of Charge

**CIRCUMSTANCES OF ALLEGED DISCRIMINATION**

☐ Race ☐ Color ☐ Sex ☐ Religion ☐ National Origin ☒ Age ☐ Disability ☐ Retaliation ☐ Genetic Information ☐ Other

See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| February 1, 2018 | Kevin J. Berry,<br>District Director | *[signed]* |

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Jihshyr Yih
2474 Trelawn Street
Yorktown Heights, NY 10598

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-00491 | Mabel Tso, Investigator | (212) 336-3762 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

Kevin J. Berry,
District Director

February 1, 2018
(Date Mailed)

Enclosures(s)

cc:

**TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY**
8, Li-Hsin Road
6, Hsinchu Science Park
Hsinchu 300-78,